## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KARL HOGFELDT                          :       NO.:  3:01CV1979 (WWE)
                                       :
v.                                     :
                                       :
OLD SAYBROOK P.D., ET AL               :       NOVEMBER 15, 2003

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

 The defendants in the above matter hereby submit this Memorandum of Law in support of their Motion for Summary Judgment, as there exists no issue of material fact in dispute.  Summary Judgment should be entered as a matter of law.

## I. STATEMENT OF FACTS.

 On October 21, 1999, at approximately 11:00 p.m., Old Saybrook Police Sergeant Donald Hull began his patrol shift in the Town of Old Saybrook. At approximately 12:30 a.m. on October 22, 1999, Sergeant Hull made a stop of a vehicle operated by the plaintiff, Karl Hogfeldt, after witnessing the vehicle's erratic operation and excessive speed.  Upon approaching the vehicle, Sergeant Hull noted a strong smell of alcohol emanating from Mr. Hogfeldt's person.  Mr. Hogfeldt refused to perform field sobriety tests.  Sergeant Hull placed Mr. Hogfeldt under arrest for driving under the influence.  Mr. Hogfeldt was then brought to the Old Saybrook Police Department. Officer Rankin arrived shortly after the stop to back-up Sergeant Hull. Rankin observed Hogfeldt attempting field sobriety tests administered by Sergeant Hull. Officers Perrotti and DeMarco were not present at the scene of the motor vehicle stop.

 While at the Old Saybrook Police Department, Mr. Hogfeldt physically resisted and was uncooperative during the search of his person, which prompted Sergeant Hull to grab and hold Mr. Hogfeldt's left arm.  Mr. Hogfeldt pulled away from Sergeant Hull and struck his face against the wall of the interview room, which was approximately 18 inches from his left side.

As a result of the incident, the plaintiff has brought the following action against the defendants.  The plaintiff's four-count Complaint contains the following federal and state law causes of action. In the first count, the plaintiff has alleged that a violation of his constitutional rights were caused by the implementation of a custom, policy or act of the Town of Old Saybrook by refusing or failing to screen, train, supervise and discipline police officers adequately, or by refusing or failing to prevent assault and batteries from occurring at their police headquarters. (Complaint, Count One, ¶ 10).

In addition to this claim against the Town of Old Saybrook, the plaintiff alleges, under 42 U.S.C. § 1983, that the individual defendants deprived the plaintiff of the following constitutional rights: (1) Fourth Amendment right to be secure in his person against unreasonable searches and seizures, including freedom from unreasonable physical abuse, coercion and intimidation; (2) Fifth and Fourteenth Amendment due process and equal protection of the law. Complaint, Count One,  ¶ 3.

Lastly, the plaintiff claims that the Town of Old Saybrook is liable to the plaintiff for the individual defendants' alleged civil rights violations, and bases this claim upon the authority of Conn. Gen. Stat. § 7-465. (Complaint, Count Three, ¶ 14).

The plaintiff further alleges the following pendent state law causes of action: (1) assault and battery against all named defendants; (2) assault and battery against the Town of Old Saybrook, pursuant to Conn. Gen. Stat. § 7-465.

The defendants hereby incorporate by reference the defendants' Local Rule 56(c)(1) Statement.

The defendants, Old Saybrook Police Department, Town of Old Saybrook, Sergeant Donald Hull, Patrolman David Perrotti, Patrolman Chris DeMarco, and Patrolman Jay Rankin, now move for summary judgment as to all the allegations set forth in the four-count Complaint.

## II.   LAW AND ARGUMENT.

### A.   STANDARD OF REVIEW.

Fed.R.Civ.P. 56(c) requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. V. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element that it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. *See* First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the district court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. V. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See* Anderson, 477 U.S. at 255; Gallo, 22 F.3d at 1223; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989); Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).).

However, the nonmoving party "may not rest upon mere conclusory allegations or denials." *See* Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted). On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See* Anderson, 477 U.S. at 255; Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. at 322-23. *Accord,* <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim) *See also* <u>Schacht v. Wisconsin Dep't of Corrs</u>., 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of act to accept its version of events"); *rev'd on other grounds*, 524 U.S. 381 (1998).

**B.     PLAINTIFF'S ASSERTION OF AN EXCESSIVE FORCE CLAIM PURSUANT TO THE FOURTEENTH AMENDMENT THROUGH THE FIFTH AMENDMENT AND 42 U.S.C. §1983 FAILS AS A MATTER OF LAW.**

The plaintiff alleges that his Fifth and Fourteenth Amendment due process rights were violated when he was subjected to "unjustified and excessive force."  (Complaint, Count One ¶3).  That claim fails as a matter of law as the Fifth and Fourteenth Amendments do not provide the proper means for redress of an excessive force claim in this case.

In 1989, the U.S. Supreme Court addressed the limits of substantive due process and concluded that where there is a specific constitutional provision affecting the conduct at issue, a more generalized substantive due process claim is preempted. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'the Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims.'" <u>Albright v. Oliver</u>, 510 U.S. 272, S.Ct. 807, 127 L.Ed.2d 114 (1994), *citing*, <u>Graham v. Connor</u>, 490 U.S. 395.

In <u>Graham</u>, the Supreme Court held that claims of excessive force brought under Section 1983 must be analyzed under the explicit textual sources of protection found in

the Fourth [Amendment], not the more general standard of "substantive due process." Id. at 490. The Court reaffirmed the Graham rule in Albright v. Oliver, supra, where the plaintiff alleged that the defendants violated his right to "substantive due process" by initiating a criminal prosecution without probable cause. Albright v. Oliver, 510 U.S. 272. The Court noted that "[t]he Framers considered the subject matter deprivations of liberty, and drafted the Fourth Amendment to address it." Id. at 274. Because an explicit textual provision of the Constitution protected against the area of governmental conduct challenged by the plaintiff, Graham precluded the plaintiff from obtaining additional relief under the notion of substantive due process. Id.

Both Graham and Albright are on point with the instant case. The plaintiff's excessive force claim must be analyzed under the explicit textual sources of protection found within the Fourth Amendment, not the more general notion of substantive due process. The same analysis applies to the plaintiff's conclusory equal protection claim. Summary judgment is appropriate, and the plaintiff's Fifth and Fourteenth Amendment claims should be dismissed as a matter of law.

## C.    SERGEANT HULL, OFFICERS DEMARCO, RANKIN AND PERROTTI AND CHIEF MOSCA ARE PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

### 1.    *Doctrine of Qualified Immunity.*

The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97, (2d Cir. 1997) *quoting,* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). *See, e.g.* Malley v. Briggs, 475 U.S. 335, 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.")

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). *See* Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989), *citing,* Anderson, 483 U.S. at 640.

Recently, the Supreme Court has re-emphasized the need to look carefully at the "contours" of the right allegedly violated by a public official when undertaking a qualified immunity analysis. Saucier v. Katz, 533 U.S. 194 (2001). With regard to the litigation in Saucier, for instance, there is no doubt that the case of Graham v. Connor, 490 U.S. 386 (1989), clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet, the Supreme Court has concluded that observation of that general principle is not enough when undertaking a qualified immunity analysis. In Saucier v. Katz, 533 U.S. 194 (2001), the Court reiterated the need for a careful examination of the particular constitutional right alleged to have been violated when considering the defense of qualified immunity. Not only should the right itself be identified with a higher degree of specificity, the precise contours of the application of that more specific right to the facts at hand must be made by the district court reviewing a defense of qualified immunity. Saucier v. Katz, 533 U.S. 194 (2001). The Saucier v. Katz  Court held:

> the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

533 U.S. 194 (2001).

That is the level of specificity required by the rule announced in Anderson v. Crieghton, emphasized in Wilson v. Layne, 526 U.S. 603 (1999) and reiterated most recently in Saucier v. Katz. It is the order of the examination – that is, this court must consider first whether the right is clearly established, then consider whether the conduct was objectively reasonable. If the right was not clearly established, the inquiry ends,

and the official is protected by qualified immunity. *See* <u>Poe v Leonard,</u> 282 F.3d 123 (2nd Cir. 2002).

**2.**     ***Plaintiff's Excessive Force Claims Under the Fourth Amendment Fail as a Matter of Law as the Sergeant's Actions Were Objectively Reasonable.***

The plaintiff's claims of unreasonable and excessive force pursuant to the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. §1983 also fail as a matter of law because the defendant Sergeant Hull acted with objective reasonableness under the circumstances and, therefore, he is shielded from liability by the doctrine of qualified immunity. Summary judgment should be entered as to the remaining individual defendants as they had no involvement with the incident subject of this case.

An analysis of an excessive force claim under the Fourth Amendment requires an objective analysis of the reasonableness of the police officer's actions in light of the totality of circumstances surrounding the incident. *See*, <u>Saucier v. Katz</u>, 533 U.S. 207; <u>Graham v. Connor</u>, 490 U.S. 395-97; <u>Lennon v. Miller</u>, 66 F.3d 425. The defense of qualified immunity is generally available against claims of excessive force. <u>Id</u>. *citing*, <u>Finnegan v. Fountain</u>, 915 F.2d 817, 822-23 (2d Cir. 1990); <u>Saucier v. Katz</u>, 533 U.S. 205. The qualified immunity analysis involves a two-step analysis: first, the plaintiff must allege a violation of a clearly established constitutional or statutory right; second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right. <u>Thomas v. Roach</u>, 165 F.3d 137, 142-43 (2d Cir. 1999). For purposes of this motion, the defendants do not contest the existence of an established constitutional right on behalf of the plaintiff to be free from the use of excessive force.

Even where a clearly established constitutional right is found, government officials can still enjoy the protection of qualified immunity. *See*, <u>Connell v. Signoracci</u>, 153 F.3d 74, 80 (2d Cir. 1998). The objective reasonableness inquiry is fact-specific to any given case, <u>Graham v. Connor</u>, 490 U.S. 396, and "the objective reasonableness test is met … if officers of reasonable competence could disagree on the legality of the defendant's actions." <u>Lennon v. Miller</u>, 66 F.3d 420, *quoting*, <u>Malley v. Briggs</u>, 475 U.S. 341. In the context of an excessive force claim, "the question for the purposes of

qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances."  (Internal quotation marks omitted.) <u>Lennon v. Miller</u>, 66 F.3d 425.

The examination of the reasonableness of an officer's actions is not based upon a review of all the facts long after the events themselves are over.  Rather, "the reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene." [1]  <u>Graham v. Connor</u>, 490 U.S. 396.  Unquestionably, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  <u>Id</u>. at 397.

Summary judgment has been granted in numerous cases involving claims of excessive force on the defense of qualified immunity.  *See generally*, <u>Saucier v. Katz</u>, 533 U.S. 194 (reversing decision of Court of Appeals with instructions to apply qualified immunity to excessive force claim); <u>Vaughan v. Cox</u>, 264 F.3d 1027 (11th Cir. 2001); <u>Sinclair v. City of Des Moines</u>, 268 F.3d 594 (8th Cir 2001); <u>Tierney v. Davidson</u>, 113 F.3d 189 (2d Cir. 1998); <u>Salim v. Proulx</u>, 93 F.3d 86 (2d Cir. 1996); <u>Lennon v. Miller</u>, 66 F.3d 416; <u>Jones v. Web</u>, 45 F.3d 178, 184 (7th Cir. 1995); <u>Edwards v. Giles</u>, 51 F.3d 155, 157 (8th Cir. 1995); <u>Rowland v. Perry</u>, 41 F.3d 167, 173 (4th Cir. 1994); <u>Banks v. Person</u>, 49 F. Supp. 2d 119 (E.D.N.Y. 1999).

For the purposes of this inquiry, the facts relevant to the determination of objective reasonableness show that Sergeant Hull's actions were objectively reasonable:

1.    On October 22, 1999, at approximately 12:00 a.m., Sergeant Hull made a stop of a vehicle operated by Hogfeldt, after witnessing the vehicle's erratic operation and excessive speed. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

---

[1]The <u>Graham</u> Court further specified the following factors to determine if the seizure is reasonable: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of law enforcement officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

2.    Upon approaching the vehicle and engaging Hogfeldt in conversation, Sergeant Hull noted a strong smell of alcohol emanating from his breath. Exhibit C, Police Report. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

3.    After Hogfeldt stepped out of the car he had to lean up against the car to maintain his balance. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

4.    Sergeant Hull noted that Hogfeldt was slurring his words together as he spoke, and presented himself with glassy and bloodshot eyes. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

5.    Mr. Hogfedlt was uncooperative, and refused to perform field sobriety tests. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

6.    Patrolman Rankin arrived at the scene in time to witness Mr. Hogfeldt refuse the field sobriety tests. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

7.    After Hogfeldt refused to perform additional field sobriety tests, Hogfeldt walked away from Sergeant Hull. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

8.    As Hogfeldt began to walk away, Sergeant Hull grabbed him by his left arm.  Hogfeldt exclaimed, "don't touch me" and attempted to pull away. Mr. Hogfeldt was then handcuffed and placed under arrest. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 39-40, 41-2, 49-50, 52.

9.    Sergeant Hull transported Mr. Hogfeldt to the Old Saybrook Police Department. Exhibit B, Police Report. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 50-52.

10.   After Sergeant Hull took custody of Hogfeldt and left the motel to transport Hogfeldt to the Old Saybrook Police Department, Patrolman Rankin returned to his patrol duties. Ex. B, Aff. Hull, ¶12.

11.   Once inside the interview room, Sergeant Hull removed the handcuffs and asked Mr. Hogfeldt to empty his pockets onto the table, at least three times.  Mr. Hogfeldt refused each time, and became increasingly upset. Ex. B, Aff. Hull, ¶13; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

12.   Sergeant Hull reached over to remove Mr. Hogfeldt's glasses from his shirt pocket.  Mr. Hogfeldt pushed Sergeant's arms away, warning him to stay away. Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

13.   Sergeant Hull took a hold of Mr. Hogfeldt's left arm and put it behind his back, holding Mr. Hogfeldt against the back interview room wall while the Sergeant checked his pockets. Ex. B, Aff. Hull, ¶10-20; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

14.   During this search, Sergeant Hull released Mr. Hogfeldt's left arm, as Mr. Hogfeldt relaxed himself somewhat.  Sergeant Hull still kept his left hand

on Mr. Hogfedlt's left elbow during this time. Ex. B, Aff. Hull, ¶10-20; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

15.    Just as Sergeant Hull reached into Mr. Hogfeldt's front right pocket, Mr. Hogfeldt yelled "get out of there" and quickly pulled away moving to his left. Ex. B, Aff. Hull, ¶10-20; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

16.    As he pulled away, Mr. Hogfeldt fell face first into the wall to his left.  Mr. Hogfeldt did not fall to the ground, but placed both hands on this wall. Ex. B, Aff. Hull, ¶10-20; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4.

17.    Sergeant Hull attempted to look at Mr. Hogfeldt's face, but Mr. Hogfeldt again pulled away, falling to his knees, and leaning over a chair. Ex. B, Aff. Hull, ¶10-20; Ex. C, Police Report; Ex. D, Dep. Hull, pp. 53-9, 63-4..

18.    Hogfeldt does not remember what happened when he was in the first interview room. Ex. A, Dep. Hogfeldt, pp. 55-8, 68.

19.    Hogfeldt only remembers waking up on the floor of the interview room. Ex. A, Dep. Hogfeldt, pp. 55-8, 68.

20.    Hogfeldt remembers hitting the wall, but does not know how that occurred. Ex. A, Dep. Hogfeldt, pp. 55-8, 68.

21.    Hogfeldt admits attempting to smear his blood on a officer wearing a white uniform shirt. Ex. A, Dep. Hogfeldt, pp. 58.

22.    Patrolman Perrotti and Patrolman DeMarco came into the interview room to assist Sergeant Hull. Ex. B, ¶20; Ex. F, Dep. DeMarco, pp. 21-3, 24, 26-7; Ex. H, Aff. Perrotti, pp. 44, 49, 68-9.

23.    Patrolman Perrotti was working at the police department front desk during the time Hull and Hogfeldt were in the interview room.  Ex. H, Dep. Perrotti, pp. 12-16, 17, 44, 49, 68-9.

24.    Patrolman DeMarco was off-duty and at his desk completing paperwork. Ex. F, Dep. DeMarco, pp. 17, 19-23, 26, 38-9.

25.    Sergeant Hull applied gauze to Mr. Hogfeldt's nose until the bleeding stopped.  Hogfeldt refused ice packs, or other medical attention. Ex. B, Police Report; Ex. B, Aff. Hul, ¶¶22-23.

As described earlier, in the context of applying qualified immunity to allegations asserting a lack of probable cause, "the issue for [qualified] immunity purposes is not probable cause in fact but arguable probable cause."  (Citations omitted; emphasis added; internal quotation marks omitted.) Myers v. Morris, 810 F.2d 1455, *cert. denied*, 484 U.S. 828. Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-

established law."  (Citations omitted; internal quotation marks omitted.)  Lee v. Sandberg, 136 F.3d 94 ¶36.

There is no issue of fact that Mr. Hogfeldt became noncompliant with the Sergeant's verbal commands while in the interview room and during processing. Further, it cannot be disputed that Sergeant Hull was justified in using physical force to grab Mr. Hogfeldt's left arm in order to empty Mr. Hogfeldt's pockets, himself.  Mr. Hogfeldt, in his gross intoxicated state, resisted Sergeant Hull's physical contact, and caused his own injuries upon falling face fist into the nearby wall.  Clearly, the actions by Sergeant Hull do not rise to a violation of the plaintiff's constitutional rights.

Given the undisputed facts, the defendants submit that no jury could find that it was objectively unreasonable for Sergeant Hull to use the aforesaid amount of force to control Mr. Hogfeldt and the situation.  As such, summary judgment should enter on behalf of Sergeant Hull and the three patrolmen as to the excessive force claims in the Complaint.

### 3.   *The Undisputed Evidence Demonstrates Officer Rankin Was Not Present At Police Headquarters When Hogfeldt Claims He Was Injured.*

Officer Rankin had a brief encounter with Karl Hogfeldt and that encounter was limited to observing Hogfeldt attempt to perform field sobriety tests administered by Sergeant Hull while in the Motel parking lot. Officer Rankin was not present at Old Saybrook Police Headquarters during the time Hogfeldt claims he was assaulted. Rankin provided back-up and resumed patrol. The plaintiff cannot offer any evidence to the contrary. Indeed, the plaintiff claims DeMarco was present at the Motel parking lot. Yet, it is undisputed that at the time Hogfeldt was stopped at the Motel parking lot, Officer DeMarco's shift had ended more than one (1) hour earlier. DeMarco was at Old Saybrook Police Headquarters, not Officer Rankin. Having no personal involvement, summary judgment should enter on behalf of Officer Rankin as to the excessive force claims in the Complaint.

      **4.**      ***The Undisputed Evidence Demonstrates Officers Perrotti And Demarco Had No Involvement With Hogfeldt Until After He Was Injured.***

Furthermore, there is no issue of fact that Officer Perrotti and Officer DeMarco did not have any involvement with the incident. Indeed, the evidence shows that Officer Perrotti and Officer DeMarco provided paper towels to clean up the blood, latex gloves to protect from any potentiall blood-borne hazard and offered Hogfeldt an ice pack. It is undisputed that Officer Perrotti was working the front desk, and Officer DeMarco was completing paper work as his desk at the time of the incident.  There exists no issue of fact concerning the actions of these two patrolmen; thus, summary judgment is proper.

**C.**    **THE FEDERAL AND STATE CLAIMS AGAINST DEFENDANT "OLD SAYBROOK POLICE DEPARTMENT" ARE BARRED AS A MATTER OF LAW SINCE A MUNICIPAL POLICE DEPARTMENT IS NOT AN ENTITY AMENABLE TO SUIT.**

In addition to the individual defendants and the Town of Old Saybrook, the plaintiffs have also named the Old Saybrook Police Department as a defendant in this lawsuit.  Any claims directed against the Old Saybrook Police Department must fail as a matter of law as no issue of material fact exists to dispute that a municipal police department is not a legal entity amendable to lawsuits.

"In §1983 actions, police departments cannot be sued in conjunction with municipalities, because the police departments are merely administrative agencies of the municipalities — not separate judicial entities." Pahle v. Colebrookdale Township, (E.D.Pa., March 26, 2002).  *See also*, Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992); Rhodes v. McDannel, 945 F.2d 117, 120 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992).  In Pahle, supra, the District Court granted the defendants' motion for summary judgment as to the claims against the municipal police department "[b]ecause the police department is merely an arm of the [municipality], and thus a redundant party." Pahle v. Colebrookdale Township, supra. *Accord*, Foley v. City of Danbury, No. 3-00-CV-712, (D.Conn. Mar. 9, 2001, Hall, J.).

This is not merely an issue with regard to pleading or proving some elements; the question is jurisdictional. It is undisputed that under Connecticut law, municipalities are

authorized to sue and be sued. Conn. Gen. Stat. §§ 7-148, 52-73, 7-465. Unless departments within municipal government constitute distinct "bodies politic" under state law, the proper defendant is the municipality itself, not the department. <u>Levine v. Fairfield Fire Dept.</u>, 1999 WL 241734, at *3 (Conn. Sup. April 19, 1999)  (<i>citing</i> <u>Gordon v. Bridgeport Housing Authority</u>, 208 Conn. 161, 173-177 (1988)).

While some administrative entities have been constituted as separate entities with the power to sue and be sued, police departments have not. See <u>Gordon</u>, 208 Conn. at 173; <u>Levine</u>, 1999 WL 241734, at *3. This applies for the Section 1983 claims as well as common law negligence. <u>Id.</u>, accord, <u>Foley v. City of Danbury</u>, No. 3-00-CV-712, (D.Conn. Mar. 9, 2001, Hall, J.) (federal constitutional claims as well as those brought under the ADEA cannot be asserted against a municipal department). Like the court in <u>Levine</u>, <i>supra</i>, Judge Hall applied this reasoning to the plaintiff's claims in <u>Foley</u> based on the ADEA. The same reasoning should be applied here.

Therefore, it is clear that the Old Saybrook Police Department is not a valid legal entity amenable to suit and, as such, summary judgment should enter as to those claims directed towards the Police Department in the Complaint.

**D.    THE PLAINTIFF CANNOT PREVAIL ON THE MONELL CLAIM SHOULD THE COURT DISMISS THE CLAIMS AGAINST THE DEFENDANT OFFICERS.  IN THE ALTERNATIVE, THERE ARE NO GENUINE ISSUES OF FACT IN DISPUTE AS TO THE FACT THAT THE TOWN OF OLD SAYBROOK HAS NOT ADOPTED A POLICY OF INDIFFERENCE.**

As a matter of law, the defendant, Town of Old Saybrook, is entitled to summary judgment as to the plaintiffs' broad and general claim that the Town of Old Saybrook, through its policies and customs, caused the plaintiff's alleged injuries.  First, if summary judgment is found in favor of the individual officers, then summary judgment must be entered as to the City.  Second, there are no facts to support the plaintiff's claims; thus summary judgment is proper.[2]

---

[2] To the extent that the individual defendants are named in their official capacities, such claims considered duplicative of naming the Town of Old Saybrook. Claims against public officials in their official capacity are considered to be claims against the municipality itself. As the Supreme Court held in <u>Brandon v. Holt,</u> 469 U.S. 464, 472, 105 S.Ct. 873, 878 (1985), "'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent'" (<i>quoting</i> <u>Monell</u>

A municipality "can be sued directly under Section 1983 for monetary, declaratory or injunctive relief [only] where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).  The Second Circuit has held that:  "In order to establish the liability of a municipality in an action under Section(s) 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy."  Vann v. City of New York, 72 F.3d 1040, 1049 (2nd Cir. 1995).

> **1.     *The Plaintiff Must First Establish A Violation Of His Constitutional Rights.***

In the instant case, if the defendant officers did not violate Mr. Hogfeldt's constitutional rights, then he would have suffered no constitutional injury.  Without a constitutional injury, the plaintiff's Monell claim against the Town is subject to dismissal as a matter of law. *See*, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam).

As extensively discussed above, neither Rankin, Perrotti or DeMarco had any personal involvement with Hogfeldt at the time Hogfeldt claims he was injured. Additionally, Sergeant Hull is protected by qualified immunity. Without a constitutional deprivation, the Monell claim must be dismissed. *See*, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam).

> **2.     *In The Alternative, The Plaintiff Does Not Set Forth Any Genuine Issues Of Fact In Dispute That Would Support A Claim Based On Monell.***

In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court concluded "there are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under § 1983. Id. at 387.  Noting the substantial disagreement among

---

v. Department of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 (1978)). In other words, "[i]t is not a suit against the official personally, for the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985). Thus, if the claim against the municipality fails, the claim against the employee in his official capacity fails.

the Circuits, the Court held that "the inadequacy of training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." Id. at 388. The Court further observed that:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

Id. at 390. [footnotes omitted]

The Vann Court stated that: '[t]o prove such deliberate indifference, the Plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Vann v. City of New York, 72 F.3d 1049. The Vann Court further opined that: "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id.

In the instant case, the plaintiffs have not pled nor can they prove that the defendant Town of Old Saybrook adopted a policy of inadequate training of its police officers so as to evidence a deliberate indifference to residents or visitors to the Town of Old Saybrook. The Town requires all officers to adhere to the training protocol established by state standards. Ex. J, Aff. McDonald. All of the defendant officers, including Sergeant Hull, completed training at the police academy. Ex. J, Aff. McDonald. While at the police academy, the defendant officers received training in, *inter alia*: human relations and use of force. Ex. J, Aff. McDonald. Prior to 2000, the defendant officers were required to attend approximately (40) forty hours of training in job related subjects within a three-year period to re-certify. Ex. J, Aff. McDonald. In July of 2002, this requirement was increased to (60) sixty hours. Ex. J, Aff. McDonald. Prior to October 21, 1999, the defendant officers attended supplemental training courses as

part of their re-certification requirement dealing with laws of arrest, and use of force. Ex. J, Aff. McDonald.

Sergeant Hull has had no citizen complaints filed against him at any time during his fourteen years of police service for the Old Saybrook Police Department. Ex. J, Aff. McDonald.    Additionally, the Police Department has never initiated an internal affairs investigation against Sergeant Hull. Ex. J, Aff. McDonald.

At the time of this incident, the Town of Old Saybrook police department had a written police policy concerning, *inter alia*, use of force, custody of prisoners and detention /holding area operations. Ex. J, Aff. McDonald; Ex. K, Excerpts of OSPD Rules and Regulations  In the past five years, the Town of Old Saybrook has not had one claim of excessive force made against it. Ex. I, Aff. Mosca.

The Vann Court stated that: "deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated. (Citations omitted; internal quotation marks omitted.) Vann v. City of New York, 72 F.3d 1049.  In the instant case, the plaintiff does not disclose an expert that would testify at trial regarding the Town's policies and how they are "contrary to the practice of most police departments" and are particularly dangerous because they presented an unusually high risk that constitutional rights would be violated. Id.  As a matter of law, the plaintiff cannot meet the City of Canton standard; thus, summary judgment should enter.

For the foregoing reasons, this Court should enter summary judgment in favor of the defendant Town of Old Saybrook as to plaintiff's Monell claims.

**E.    ALTERNATIVELY, THE COURT SHOULD DECLINE TO
         EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS.**

In addition and the alternative, this Court, having decided that the plaintiff has
failed to state valid federal claims or that defendants are protected by qualified
immunity, should decline to exercise jurisdiction over the pendant state law claims,
including the state constitutional claims. *See United Mine Workers of America v. Gibbs*,
383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though
not insubstantial in the jurisdictional sense, the state claims should be dismissed as
well."); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (same).

**F.    PLAINTIFF'S STATE-LAW CLAIM FOR ASSAULT AND
         BATTERY FAILS SINCE THE AMOUNT OF FORCE USED WAS
         REASONABLE UNDER THE CIRCUMSTANCES PRESENTED
         AND JUSTIFIED UNDER CONNECTICUT LAW.**

The plaintiff alleges that defendant officers subjected the plaintiff to an intentional
assault and battery.  Sergeant Hull, however, was the only officer that was with the
plaintiff, and/or who used force upon the plaintiff.  The amount of force used by
Sergeant Hull was proper under Connecticut State law.

Conn. Gen. Stat. §53a-22 reads, in relevant part:

> (a) A peace officer … is justified in using physical force upon another
> person when and to the extent he reasonably believes such to be
> necessary to: (1) effect an arrest or prevent the escape from custody of
> a person whom he reasonably believes to have committed an offense
> … or (2) defend himself or a third person from the use of imminent use
> of physical force while effecting or attempting to effect an arrest or while
> preventing or attempting to prevent escape.

**1.    *Sergeant Hull's Use Of Force Was Justified.***

The amount of force used by Sergeant Hull was certainly reasonable, given the
actions of the plaintiff in refusing to comply with the Sergeant Hull's verbal commands to
empty his pockets, and subsequently physically resisting the Sergeant's attempts to
empty the plaintiff's pockets.  Indeed, the plaintiff's actions in breaking the Sergeant's
hold, and striking the wall with his face, were brought upon himself, and not the forceful
actions of the Sergeant.

This type of force, as a matter of law, is reasonable and justified pursuant to Conn. Gen. Stat. §53a-22.  As such, judgment should enter as a matter of law as to the plaintiff's claim of assault and battery.

>   **2.      *Officers Demarco, Perrotti And Rankin Did Not Use Any Force And Had No Personal Involvement In The Incident At The Time Hogfeldt Claims He Was Injured.***

As for the remaining defendant officers, there exists no issue of fact concerning their non-involvement in this matter.  Accordingly, summary judgment is proper as to the remaining individual defendants.

>   **G.      PLAINTIFF'S CLAIM FOR INDEMNIFICATION PURSUANT TO CONN. GEN. STAT. §7- 465 MUST FAIL IF SUMMARY JUDGMENT IS GRANTED AS TO THE CLAIMS AGAINST THE INDIVIDUAL OFFICERS.**

>   **1.      *Conn. Gen. Stat. §7-465.***

Connecticut's Appellate Court has held that: "Whatever may be the full scope and effect of [7-465], in no event may the municipality be held liable under it unless the municipal employee himself becomes obligated to pay [sums] by reason of the liability imposed upon … [him] by law for physical damage to person or property." (Internal quotation marks omitted.) Burns v. Board of Education, 30 Conn. App. 594 (1993), *rev. on alternate grounds*, 228 Conn. 640 (1994). The statute does not apply to willful, wanton or intentional conduct. Conn. Gen. Stat. § 7-465.

If Sergeant Hull's use of force was justified, the court must find in favor of the defendant Town on this claim.

>   **2.      Conn. Gen. Stat. § 7-465 Applies Only To State Law Claims; Not To Actions Brought Under 42 U.S.C. §1983.**

Despite pleading that Conn. Gen. Stat. §7-465 allows indemnification for the plaintiff's civil rights claims founded on 42 U.S.C. §1983, this claim must fail. The plaintiff cannot transform Conn. Gen. Stat. §7-465 into something more powerful that the United States Supreme Court.

It is axiomatic that as a matter of law, the Town of Old Saybrook cannot be liable on a theory of *respondeat superior* for the violation of a constitutional right by any of the defendant officers. Indeed, the liability of the Town of Old Saybrook, like any other

municipal entity, may only be based on the rule announced in *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). It is only when the execution of a municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible under §1983." *Monell*, 436 U.S. at 694.

## III.    <u>CONCLUSION</u>:

Based on the foregoing, the defendants respectfully request that this Court grant their Motion for Summary Judgment as a matter of law.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
OLD SAYBROOK POLICE
DEPARTMENT, SERGEANT DONALD
HULL, PATROLMAN DAVID
PERRROTTI, PATROLMAN CHRIS
DEMARCO, PATROLMAN JAY
RANKIN and THE TOWN OF OLD
SAYBROOK


<u>/s/ John J. Radshaw, III</u>
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 15th day of November 2003.

Bruce E. Newman, Esquire
Newman, Creed & Associates
99 North Street, Route 6
P.O. Box 575
Bristol, CT 06011

A. Paul Spinella, Esquire
Spinella & Associates
One Lewis Street
Hartford, CT  06103

<u>/s/ John J. Radshaw, III</u>
Thomas R. Gerarde
John J. Radshaw, III