UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KARL HOGFELDT | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:01 CV 1979 (WWE) |
| | : | |
| vs. | : | |
| | : | |
| OLD SAYBROOK POLICE DEPARTMENT | : | |
| SERGEANT DONALD HULL; PATROLMAN | : | |
| DAVID PERROTTI; PATROLMAN CHRIS | : | |
| DEMARCO; PATROLMAN JAY RANKIN; | : | |
| EACH INDIVIDUALLY AND AS POLICE | : | |
| OFFICERS AND MEMBERS OF THE OLD | : | |
| SAYBROOK POLICE DEPARTMENT; AND | : | |
| THE TOWN OF OLD SAYBROOK OF | : | |
| OLD SAYBROOK | : | MAY 18, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OBJECTION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

This is an action for the recovery of damages sustained when Karl Hogfeldt's constitutional rights were violated by members of the police department of the Town of Old Saybrook. The defendants have moved for summary judgment. The plaintiff opposes their motion for summary judgment.

**I.    <u>STATEMENT OF FACTS</u>**

On October 21, 1999 at approximately 10:30 p.m., members of the Town of Old Saybrook police Department including Defendants Donald Hull, David Perrotti, Chris DeMarco, and Jay Rankin arrested Mr. Hogfeldt in the parking lot of the Saybrook Motor

1

Hotel.  Mr. Hogfeldt was transported to the Old Saybrook police station.  At that time, one or more of the defendants used unnecessary and excessive force while Mr. Hogfeldt was in custody, including striking him about the head and body, pushing him against a cement wall, and punching him.

As a result of the beating, Mr. Hogfeldt sustained numerous injuries, including a broken left arm, broken ribs, and a broken nose.

On or about October 19, 2001, Mr. Hogfeldt brought suit against the Town of Old Saybrook, its police Department and individual members of the police Department.  Mr. Hogfeldt alleges that the defendants violated his federal civil rights and assaulted him.

The defendants now move for summary judgment in this matter.  As set forth below, the plaintiff opposes this motion.

## II.   LAW AND ARGUMENT

### A.   Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a party moving for summary judgment bears a heavy burden.  The movant must clearly and unequivocally demonstrate the lack of any genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Rule 56 (c). Fed. R. Civ. Pro.   "On summary judgment, the inferences to be drawn from the underlying facts contained in [the pleadings and other supporting documents] must be viewed in the light more favorable to the party

opposing the motion." United States v. Diebold, 369 U.S. 654, 655 (1962).

"In determining whether summary judgment was appropriate, we resolve all ambiguities and draw all reasonable inferences against the moving party." Lefcourt v. United States, 125 F.3d 79,82 (2nd Cir. 1997).

The function of the court is not to resolve issues of fact, but merely to determine if such issues exist. Rodriquez v. Board of Ed. Of Eastchester Univ. Free School, 620 F.2d 362 (2nd Cir. 1980). If the movant fails to meet its burden, then the motion for summary judgment must be denied.

"When the resolution of the qualified immunity defense involves disputed questions of material fact, the trial court should not grant summary judgment." Moffitt v. Town of Brookfield, 950 f.2d 880, 886 (2nd Cir. 1991).

**B.** **Plaintiff's assertion of an excessive force claim pursuant to the Fourteenth Amendment through the Fifth Amendment and 42 U.S.C. § 1983 does not fail as a matter of law.**

In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court directed that excessive force claims be examined under the standard applicable to the specific constitutional right allegedly violated, which generally is the Fourth or Eighth Amendment. However, the Fourteenth Amendment's substantive due process survives in narrow areas. See, e.g., Rodriguez v. Phillips, 66 F.3d 470 (2d Cir. 1995). "Certain

3

wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.  Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional provision in turn." Soldal v. Cook County, 506 U.S. 56, 70 (1992).

In this case, the Plaintiff's constitutional rights to free speech and counsel are implicated in addition to his Fourth Amendment right to be free from excessive force.

Mr. Hogfeldt recalls that at the time he was arrested, all the police officer had asked of him was to produce his driver's license, registration and insurance. Ex. A., Dep. Hogfeldt p. 45.  The officer then told him to get out of the vehicle and lean against it. Ex. A., Dep. Hogfeldt p. 45.  Without another word, Mr. Hogfeldt was handcuffed and put into the back of a police vehicle. Ex. A., Dep. Hogfeldt. p. 47.  The officer realized, and informed the police department via radio, that Mr. Hogfeldt had been involved in what was called the "Blacker incident," an incident which Mr. Hogfeldt had reported to the police. Ex. A., Dep. Hogfeldt. Pp. 49-51.  Although Mr. Hogfeldt asked why he was being arrested, the officer did not reply. Ex. A., Dep. Hogfeldt p. 53-54.  Shortly after Mr. Hogfeldt arrived at the police station and was facing a wall, he turned to see a newcomer enter the room.  For his curiosity, he was ordered "I told you to face that fucking wall!" and his head bashed against the wall. Ex. A., Dep. Hogfeldt p. 55-56.

4

When the beating continued, Mr. Hogfeldt asked "Why are you doing this to me"" Ex. A., Dep. Hogfeldt p 56, 75.

In addition, the defendant himself testified that Mr. Hogfeldt had indicated a need to speak with his attorney.  Ex. B., Dep. Hull pp 42-48.  The officer continued his questioning of Mr. Hogfeldt and never responded to Mr. Hogfeldt's statement.  Ex. B., Dep. Hull pp 42-48.

The Plaintiff was arrested and punished due to his demands for more information concerning his arrest and for indicating a need for an attorney.   Because the Plaintiff's claims implicate the First Amendment and the constitutional right to have an attorney as well as unlawful force, the Plaintiff's Fourteenth Amendment claim should not be dismissed.

### C. Sergeant Hull, Officers DeMarco, Rank and Perrotti and Chief Mosca are not protected by the Doctrine of Qualified Immunity

#### 1. Doctrine of Qualified Immunity

The doctrine of qualified immunity shields state officials from liability for damages only if their actions do not violate "clearly established statutory or constitutional rights of which a <u>reasonable person would have known</u>."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) (emphasis added).  "When the

resolution of the qualified immunity defense involves disputed questions of material fact, the trial court should not grant summary judgment." Moffit v. Town of Brookfield, 950 F. 2d 880, 886 (2nd Cir. 1991).

In fact, state officials have immunity only when it is objectively reasonable for the officials to have believed that their act did not violate those rights. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

"To be clearly established, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." It is not necessary that there be a case which is factually identical or holds the specific action at bar unlawful. Rather, the unlawfulness of the action must be apparent "in light of existing law." Hare v. City of Corinth MS, 36 F. 3d 412, 415 (5th Cir. 1994), (citing Anderson v. Creighton, supra 483 U.S. at 640). "Once disputed factual issues are resolved, the application of qualified immunity is . . . ultimately a question of law for the court to decide." Finnigan v. Fountain, supra. Pre-trial resolution of the defense, however, may be thwarted by a factual dispute . . . and raised at the close of the Plaintiff's evidence. Warren v. Dwyer, 906 F.2d 70, 74 (2nd Cir. 1990). Government officials are not liable for "bad guesses in grey areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert denied, 113 S.Ct. 1048 (1993).

6

As such, an official does not have such immunity where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he was doing violates that right."  Anderson v. Creighton, supra.

Whether the police acted under the protection of qualified immunity is generally, therefore, a question for the trier of fact.  Id.

In the case of Oliveira v. Mayer, 23 F.3d 642 (2nd Cir. 1994), cert. denied, __ U.S. __, 113 S.Ct. 721, 130 L. Ed. 2d 627, the court held that a factual dispute precluded judgment as a matter of law on the issue of qualified immunity.

In Oliveira, the Second Circuit affirmed the trial court's decision to grant a directed verdict in the Plaintiff's favor on the ground that the police officers acted unreasonably when they stopped/arrested the Plaintiff.  Oliveira v. Mayer, 23 F.3d 642, 648 (2nd Cir. 1994).  The Second Circuit, however, reversed the trial court's decision on qualified immunity.  The Second Circuit held that when facts are disputed "jury consideration is normally required." Id., 23 F.3d 649, citing Frank v. Relin, 1 F.3d 1317, 1328 (2nd Cir.), cert. Denied, __ U.S. __ 114, S.Ct. 604, 126 L. Ed. 2d 569 (1993) and Ying Jing Gan v. City of New York, 996 F. 2d 522, 532 (2nd. 1993).

In the present case, genuine factual issues exist as to whether the defendant police officers had adequate training and supervision in the following "bright line" areas, to wit:  whether the defendants had a reasonable suspicion to stop Mr. Hogfeldt,

7

whether the defendants had probable cause to arrest Mr. Hogfeldt; what constitutes the use of excessive force; and whether the defendants conspired or acted jointly to violate Karl Hogfeldt's civil rights.

In the context of the qualified immunity doctrine, these issues must be tried factually in order to resolve the issue of qualified immunity.

### 2. Plaintiff's Excess Force Claims Under the Fourth Amendment Do Not Fail As a Matter of Law because Sergeant's Actions Were Not Objectively Reasonable.

Sergeant Hull did not act with objective reasonableness under the circumstances and, therefore, he is not shielded from liability by the doctrine of qualified immunity. Summary judgment should not enter as to the remaining individual defendants as they may well have participated in the beating, and, at the very least, failed to stop the beating from being administered to Mr. Hogfeldt.

Mr. Hogfeldt's head was slammed against the wall twice. He lost consciousness. Ex. A., Dep. Hogfeldt p. 55-56. Upon regaining consciousness and seeking medical treatment, he realized that in addition to sustaining a broken nose from being slammed against the wall, he suffered a hematoma to the frontal lobe of his brain, four broken ribs, a hernia, a broken arm, and permanently impaired vision due to an eye injury.

These injuries are not consistent with a fall against a wall. These injuries are

consistent with an assault.  See Ex. C Affidavit of Ira J. Kanfer, M.D.  Although Mr. Hogfeldt does not remember receiving all of these injuries at the time, due to his loss of consciousness, it does not change the fact that he walked into the police station without injury and walked out of the police station with obvious facial injuries, and complaining of pain in his arm and ribs.  The injuries speak for themselves.

There was no lawful, legitimate reason for any officer to use the degree of force necessary to produce the injuries suffered by the plaintiff.  The use of force against the plaintiff by the defendant police officers of the Town of Old Saybrook was objectively unreasonable and contrary to generally accepted police practices.  Ex. D, Affidavit of Lou Reiter.

There is a vast difference of material fact on how the plaintiff was treated at the police station and the degree of force used upon him.  Summary judgment should not enter on this point.

3. The Undisputed Evidence Does Not Demonstrate that Officer Rankin Was Not Present At Police Headquarters When Hogfeldt Claims He was Injured.

The defendants admit that defendant police officer Rankin was on duty the night Mr. Hogfeldt sustained his injuries.  We have only the words of the defendants that Officer Rankin did not enter police headquarters while Mr. Hogfeldt was there.  Mr. Hogfeldt was unconscious during the crucial time.  Dep. Hogfeldt, pp. 57-59, 68, 70.

9

The motel parking lot where Officer Rankin allegedly first saw Mr. Hogfeldt is only minutes away from the Old Saybrook police station.  It certainly is possible that Officer Rankin stopped in at the police station in the course of the beating.  Summary judgment is not appropriate at this time.

4.    <u>The Undisputed Evidence Does Not Demonstrate that Officers Perrotti and DeMarco Had No Involvement With Hogfeldt Until After He Was Injured.</u>

The defendants admit that defendant police officers Perrotti and DeMarco were at the Old Saybrook police station on the night Mr. Hogfeldt sustained his injuries.  The defendants allege that neither officer was involved in any incident during which Mr. Hogfeldt received his injuries.   Mr. Hogfeldt was unconscious during the crucial time, Dep.. Hogfeldt, pp. 57-59, 68, 70, and the defendants have not offered a credible explanation for his injuries.  However, immediately before and immediately after his loss of consciousness, the plaintiff recalls defendant DeMarco being in the room with him.  Dep. Hogfeldt, pp. 55-56, 61, 63-65, 71-72.  Also, even if defendant Perrotti did not participate in the beating, he was in a position to hear the plaintiff being beaten and did not nothing to stop the plaintiff from being beaten.  Dep. Hogfeldt, pp 76-77.  Summary judgment is not appropriate at this time.

10

**C.     The Federal and State Claims Against the Defendant "Old Saybrook Police Department" are Barred as a Matter of Law Since Municipal Police Department is Not An Entity Amenable to Suit**

The plaintiff concedes that the Old Saybrook Police Department is not an entity amenable to suit.

**D.     The Plaintiff Can Prevail on the Monell Claim Should the Court Dismiss the Claims Against the Defendant Officers.  There are Genuine Issues of Fact in Dispute as to the Fact that the Town of Old Saybrook Has Adopted a Policy of Indifference**

**1.     The Plaintiff Has Established a Violation of his Constitutional Rights.**

The plaintiff sustained serious injuries while in the custody of the Town of Old Saybrook police officers.  The defendants allege that the plaintiff "fell."  This is not credible.  As set forth previously, the bulk of the evidence suggests that the plaintiff was brutally beaten.  The plaintiff has established a violation of his constitutional rights.

**2.     The Plaintiff Sets Forth Genuine Issues of Fact in Dispute that Would Support A Claim Based on Monell**

"[I]t is well established that a municipality may not be held liable solely on the basis of respondeat superior.  See, Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).  In order to establish the liability of a municipality in an action under Section 1983 for unconstitutional acts by its

11

employees, a Plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." Powell v. Gardner, 891 F. 2d 1039, 1045 (2nd Cir. 1989).

"[M]unicipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 478, 480, 106 S. Ct. 1292, 1298, 89 L.Ed. 2d 452 (1986). In Leatherman v. Farrant County, 507 U.S. 163 (1993), the court rejected heightened pleading requirements for counts alleging municipal liability. In fact, a Plaintiff is not required to allege more than one incident of misconduct to support an allegation of municipal policy or custom. Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 479-80 (7th Cir. 1997).

"If the decision to adopt that particular course of action is properly made by that government's authorized decision makers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policies, the municipality is equally responsible whether that action is taken only once or to be taken repeatedly." Id. 475 U.S. 481, 106 S. Ct. 1299.

Such policy or custom may include inadequate training or supervision which becomes the moving force behind the constitutional violation. See for example, Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), supra (County prosecutor gave

order that resulted in constitutional violation); <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981) (decision of city counsel to cancel license permitting concert directly violated constitutional rights); <u>Owen v. City of InDependence</u>, 441 U.S. 622 (1980) (city council discharged employee without due process).  In such cases, there are no real problems with respect to the issues of fault or causation.  <u>See also Bennett v. Pippin</u>, 74 F.3d 578, 586 & n.5 (5th Cir. 1996) (County held liable for Sheriff"s rape of murder suspect, where Sheriff was final policymaker in matters of law enforcement).

In <u>Grandstaff v. City of Borger</u>, 767 F.2d 161 (5th Cir. 1985), the plaintiff offered no evidence of misconduct by officers of the department prior to the evening in question.  The court found however, that there were several examples of reckless misbehavior during the incident involving the plaintiff"s decedent.  More significantly, the court relied on the complete failure to the police department to investigate the incident, or to discipline any of the officers involved, in order to establish the informal policy of the department:

> The disposition of the policymaker may be inferred from his conduct after the events of that night.  Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error.  The officers testified at the trial that no changes had been made in their policies.  If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to concluded that it was accepted as the way things are done and have been done in the City of Borger.  If prior policy had been violated we would expect to see a different reaction.  If what the officers did and failed to do on [the date of the incident] was

> not acceptable to the police chief, changes would have been made.
> "This reaction . . .   says more about the existing disposition of the City"s policymaker than would a dozen incidents where individual officers employed excessive force".

Id. at 171.

The First Circuit has also held that evidence of misconduct by officers during the event which gave rise to suit may be used as some evidence of the existence of a municipal policy or custom which caused the constitutional violation.  In Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1985), the court held that where there is some independent evidence of the existence of an improper practice, the facts of the incident on trial may be relied upon as additional proof of the practice.  The court concluded that where the incident involved the joint actions of the entire night watch of the police department, it was a reasonable inference that all the officers were operating under a shared set of rules and customs.  The court also held that it was proper to admit evidence of the city"s failure to investigate the incident properly and to discipline the officers involved, as some evidence of what customs or policies were in effect in the city at the time of the incident.

In addition to establishing a policy or custom based on acquiescence in unconstitutional conditions, a Plaintiff must show that such acquiescence was a proximate cause of the violation.  In Spell v. McDaniel, 824 F.2d 1380, 1391, the court held that the causal link is shown if "occurrence of the specific violation was made

14

reasonably probable by permitted continuation of the custom."

In the instant case, there is evidence that officers received inadequate training in a number of areas.  Although the defendant police officers received training in the use of force (see Ex. J to defendants Memorandum in Support of Motion for Summary Judgment, Aff. of McDonald), the defendants failed to ensure the safety and well being of the plaintiff while he was in their custody.  Defendant Hull knew that the plaintiff had received an injury to his head, but failed to call for medical personnel as a reasonably trained officer would have.  Ex. D, Aff. Lou Reiter.  The defendants failed to document the plaintiff's injuries prior to the plaintiff leaving the police station, although there was no reason not to do so.  Ex. D, Aff. Lou Reiter.

Also, although any police officer in the police station would have been able to hear the beating of the plaintiff, no officer came to his assistance or made the defendants cease beating the plaintiff.  Ex. A, Dep. Hogfeldt pp. 76-77.  The defendants thus lacked adequate training on their duty to intervene when their fellow officers are using unlawful force.

 "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, the policymakers of the city can

15

reasonably be said to have been deliberately indifferent to the need." <u>Canton v. Harris</u>, 489 U.S. 378, 390 (1988).

Accordingly, open factual issues presently exist as to whether the lack of adequate training, guidance and/or supervision provided to police officers by the Town of Old Saybrook Police Department and Police Chief Mosca, evidence any municipal policy which was the moving force behind the violation of Karl Hogfeldt's constitutional rights.

**E.** **The Court Should Not Decline to Exercise Jurisdiction Over the State Law Claims**

The plaintiff has demonstrated that he has stated valid federal claims and that the defendants are not protected by qualified immunity.  In the interests of judicial economy, the court should continue to exercise jurisdiction over the pendant state law claims, including the state constitutional claims.

**F.** **Plaintiff's State Law Claim for Assault and Battery Does Not Fail Because the Amount of Force used was Not Reasonable under the Circumstances Presented and Justified under Connecticut Law.**

1. <u>Sergeant Hull's Use of Force Was Not Justified.</u>

As set forth previously, defendant Hull had no cause to use the degree of force that was necessarily used to produce the injuries suffered by the plaintiff.

### 2. Officers DeMarco, Perrotti and Rankin May Have Used Force in the Incident at the Times Hogfeldt Claims He was injured.

As set forth previously, Officers DeMarco, Perrotti and Rankin were in the immediate vicinity at the time Mr. Hogfeldt sustained his injuries. Even if none of the officers actually inflicted blows upon Mr. Hogfeldt, it is a logical and reasonable inference that they were aware that Mr. Hogfeldt was being beaten and had a duty to stop the beating.

### G. Plaintiff's Claim for Indemnification Pursuant to Conn. Gen. Stat. § 7-465 is Valid

The defendants' use of force was not justified. If the individual defendants in their personal or official capacities are found liable for the plaintiff's injuries, then the Town of Old Saybrook will be bound to indemnify them. The plaintiff has alleged both federal and state law claims. As long as the court is exercising pendant jurisdiction over the state law claims, the plaintiff's claim for indemnification is valid and should not be dismissed.

### III.     CONCLUSION

Based on the foregoing, the plaintiff respectfully requests that this Court deny the defendants' Motion for Summary Judgment as a matter of law.  There are material issues of fact in dispute such that summary judgment is not appropriate at this time.

**PLAINTIFF,**

**By**_____
**A. Paul Spinella, Esq.**
**Spinella & Associates**
**One Lewis Street**
**Hartford, CT 06103**
**860 728-4900**
**Fed. Bar No.: ct00078**

## **CERTIFICATION**

    This is to certify that a copy of the foregoing has been sent, postage prepaid, via U.S. mail to the following counsel of record on this date.

    Bruce E. Newman, Esq.
    Newman, Creed & Associates
    99 North Street, Route 6
    PO Box 575
    Bristol, CT 06011

    Thomas R. Gerarde, Esq.
    John J. Radshaw, III, Esq.
    Howd & Ludorf
    65 Wethersfield Avenue
    Hartford, CT  06114

_____
A. Paul Spinella