UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KARL HOGFELDT | NO.: 3:01CV1979 (WWE) |
| v. | |
| OLD SAYBROOK POLICE DEPARTMENT, ET AL | SEPTEMBER 13, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE RE TESTIMONY AND OPINIONS OF DR. IRA
KANFER**

**I.   BACKGROUND.**

The essential controversy in this case is whether Karl Hogfeldt was assaulted by Sgt. Hull in an interview room at Old Saybrook Police Headquarters on the evening of October 21, 1999 or in the early morning hours of October 22, 1999.

On October 21, 1999, at approximately 11:00 a.m., Old Saybrook Police Sergeant Donald Hull began his patrol shift in the Town of Old Saybrook. At approximately 12:30 a.m. on October 22, 1999, Sergeant Hull made a stop of a vehicle operated by the plaintiff, Karl Hogfeldt, after witnessing the vehicle's erratic operation and excessive speed.  After stopping the vehicle and upon approaching the same, Sergeant Hull noted a strong smell of alcohol emanating from Mr. Hogfeldt's person. Mr. Hogfeldt refused to perform field sobriety tests.  Officer Rankin arrived shortly after the stop to back-up Sergeant Hull. Officer Rankin observed Hogfeldt attempting field sobriety tests administered by Sergeant Hull.  Sergeant Hull placed Mr. Hogfeldt under arrest for driving under the influence.  Mr. Hogfeldt was then brought to the Old Saybrook Police Department.

While at the Old Saybrook Police Department, Mr. Hogfeldt physically resisted

and was uncooperative during the search of his person, which prompted Sergeant Hull to grab and hold Mr. Hogfeldt's left arm.  Mr. Hogfeldt pulled away from Sergeant Hull and struck his face against the wall of the interview room, which was approximately eighteen inches from his left side.

As a result of the incident, the plaintiff has brought the following action against the defendants.  The plaintiff's four-count Complaint contains the following federal and state law causes of action. In the first count, the plaintiff has alleged that a violation of his constitutional rights were caused by the implementation of a custom, policy or act of the Town of Old Saybrook by refusing or failing to screen, train, supervise and discipline police officers adequately, or by refusing or failing to prevent assault and batteries from occurring at their police headquarters.

In addition to this claim against the Town of Old Saybrook, the plaintiff alleges, under 42 U.S.C. § 1983, that the individual defendants deprived the plaintiff of the following constitutional rights: (1) Fourth Amendment right to be secure in his person against unreasonable searches and seizures, including freedom from unreasonable physical abuse, coercion and intimidation; (2) Fifth and Fourteenth Amendment due process and equal protection of the law.  Lastly, the plaintiff claims that the Town of Old Saybrook is liable to the plaintiff for the individual defendants' alleged civil rights violations, and bases this claim upon the authority of Conn. Gen. Stat. § 7-465.  The plaintiff further alleges the following pendent state law causes of action: (1) assault and battery against all named defendants; (2) assault and battery against the Town of Old Saybrook, pursuant to Conn. Gen. Stat. § 7-465.

The defendants expect the plaintiff to offer testimony from Ira J. Kanfer, M.D. that

Hogfeldt's injuries are consistent with an assault; (Kanfer Depo. at 38, attached hereto as **Exhibit A**); that Hogfeldt's injuries occurred at the police station (Kanfer Depo. at 38); that Hogfeldt was not injured before he came to the police station; (Kanfer Depo. at 39); that Hogfeldt did not suffer his injuries after he departed the police station (Kanfer Depo. at 39); that Hogfeldt's rendition of event's makes much more sense and Hogfeldt's story comports with the facts and Hull's doesn't (Kanfer Depo. at 40; 52); that Sgt. Hull assaulted Hogfeldt (Kanfer Depo. at 44); an d, that a fall against the wall did not cause Hogfeldt's injuries because the natural response it to put one's hands up in front of the wall, which is a reflexive action (Kanfer Depo. at 45-46).

The defendants now move to exclude these opinions as they are unreliable, speculative, not based upon sufficient fact or information, beyond Kanfer's expertise, not beyond the knowledge of the average juror and not helpful to the jury.

II.   **LAW AND ARGUMENT.**
  A.   **STANDARD OF REVIEW.**

Fed. R. Evid. 702, which governs the admissibility of scientific or technical expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Expert testimony must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson. *Id.*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court made clear that the district court has a "gatekeeping" function under Rule 702, and is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. In fulfilling this role, the district court must consider both the reliability and relevance of the proffered testimony. In gauging reliability, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on "sufficient facts or data;" (2) that the testimony "is the product of reliable principles and methods;" and (3) that "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In so doing, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1993).

Although Rule 702 sets forth specific criteria for the district court's consideration, these criteria are not exhaustive. The district court may consider a number of other factors in determining the reliability of the proffered testimony, including: (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the technique's known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94.

Expert witnesses may not testify based on their personal view of the veracity of a lay witness's testimony. *See United States v. Scop*, 846 F.2d 135, 142 (CA2 1988), *rev'd in part on other grounds*, 856 F.2d 5 (CA2 1988); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1072 (CA3 1996). Similarly, "[Expert witness] statements embodying legal conclusions exceed[ ] the permissible scope of opinion testimony under the Federal Rules of Evidence". *United States v. Scop*, 846 F.2d at 139; *see also, United States v. Bilzerian*, 926 F.2d 1285, 1294 (CA2 1991), *citing Expert Legal Testimony*, 97 HARV.L.REV. 797 (1984).

Whether to admit expert testimony is a matter left to the discretion of the trial judge and is set aside only when the decision is "manifestly erroneous." *United States v. Schwartz*, 924 F.2d 410, 425 (CA2 1991).

Whether the expert is "qualified" is initially a question for the Court. Fed. R. Evid. 104(a). There is no presumption that a witness is competent to give an opinion; it is incumbent upon a party offering an expert witness to establish that the witness possesses the necessary learning, knowledge, skill, or practical experience to enable him or her to give expert testimony. The Rule 104(a) inquiry requires the proponent of the expert to show by a preponderance of the evidence that the expert's opinion is admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), *citing Bourjaily v. United States*, 43 U.S. 171, 175-76 (1987).

### B. DR. KANFER'S OPINIONS ARE NOT HELPFUL TO THE TRIER OF FACT IN THIS CASE.

Expert testimony must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson. Fed. R. Evid. 702.

5

The following opinion of Dr. Kanfer is not based on scientific, technical or other specialized knowledge and is not beyond the ken of the average juror in this case.

1. Hogfeldt's injuries did not occur after he left the police station. (Kanfer Depo. at 39.)

Dr. Kanfer opines that since there were witnesses that saw Hogfeldt after the incident that did not observe him hurt himself in any way, and because he had no apparent injuries when he was taken into custody, that Hogfeldt's injuries must have occurred at the police station while he was in custody. (Kanfer Depo. at 39-40.) This opinion is based on common logic and not beyond the knowledge of the average juror. As such, this opinion must be excluded.

Furthermore, Dr. Kanfer does not possess any training, education or experience beyond the average juror that makes him specially qualified to offer this opinion. As such, Dr. Kanfer is not qualified to offer this opinion.

In essence, this case comes down to a credibility determination of the witnesses. This opinion of Dr. Kanfer's does not go beyond the knowledge of the average juror because it is not based on medical evidence. As such, it must be excluded.

**C.   DR. KANFER'S TESTIMONY MUST BE PRECLUDED BECAUSE HE IS NOT QUALIFIED TO OFFER THE OPINIONS EXPRESSED IN HIS REPORT OR IN HIS DEPOSITION TESTIMONY**

The *Daubert* approach requires the district court to ensure that the "expert knows whereof he speaks." *Id.* at 590. In determining whether an expert does know "whereof he speaks" federal courts have generally looked at two things: (1) whether the proffered expert has minimal education or experience in a field that is relevant to the subject matter, and (2) whether the expert has sufficient expertise in the particular field in which he is offering an opinion to enable him to give testimony that is capable of assisting the

6

trier of fact. To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony. *See United States v. Diallo*, 40 F.3d 32, 34 (CA2 1994).

This Court must conduct an initial inquiry into the qualifications of a proffered expert before anything else. Fed .R. Evid. 104(a). There is no presumption that a witness is competent to give an opinion. Once qualified, the court must then examine the opinions themselves. The undisputed evidence demonstrates that Dr. Kanfer is not qualified to offer some of his opinions in the present case.

It is undisputed that:

1. Dr. Kanfer's opinion that Hogfeldt's nose injury did not occur by falling into the wall is based solely on his experience. (Kanfer Depo. at 47.)

2. Other than educational experiences, Dr. Kanfer has no special training of a law enforcement nature. (Kanfer Depo. at 29.)

3. He holds no licenses other than his Florida and Connecticut medical licenses. (Kanfer Depo. at 29.)

4. Dr. Kanfer holds a bachelors and M.S. in psychology. (Kanfer Depo. at 28.)

5. Doctor Kanfer is a medical doctor.

6. His board certifications include anatomical pathology, clinical pathology and forensic pathology. (Kanfer Depo. at 29.)

7. Dr. Kanfer's expertise is in how disease and trauma effect the physical

7

body. (Kanfer Depo. at 31.)

Defendants do not dispute that Dr. Kanfer is qualified to review Hogfeldt's medical records and give the opinion that they resulted from blunt force trauma or that the injuries are consistent with an assault. Clearly, these opinions fall within his expertise of "how disease and trauma effect the physical body." However, once Dr. Kanfer's goes beyond the medical records, by reviewing the testimony of the parties to the incident, and gives an opinion as to the manner in which the blunt force trauma occurred or whether one version of the events is more likely than another, he has surpassed his area of expertise and is not qualified to offer an opinion.

Dr. Kanfer has no expertise in determining, from the injuries, the movement of Hogfeldt's body or what it struck or struck it to cause the injuries. Forensic pathologists are simply not in the practice of reviewing testimony in order to express an opinion as to the cause or circumstances of an injury. Forensic pathologists examine bodies or medical records, *not testimony*. This is where the limitations of Dr. Kanfer's qualifications are clearly apparent.

This distinction is best considered by an example. A pathologist could certainly examine a murder victim and determine he died of blunt force trauma to the head. However, the crime scene investigator is the person that looks at the crime scene to see determine how the injury was inflicted in the more general sense. For example, by looking at blood spatter, the weapon or the location of the body, to determine the events leading up to the blunt force trauma. In other words, the pathologist looks at the body, and in some instances, the location of the body, to determine the cause of death, and other elements related to the body, such as body temperature or decomposition to

8

determine the time of death. But, the crime scene investigator looks at the elements external to the body to determine what happened. The crime scene investigator is the one that looks at the baseball bat and blood spatter and location of the wound on the top of the head, and a chair in the room where the body is found to determine, for example, that the killer stood behind the victim, the victim was seated at a chair at a computer, the killer swung the bat from the right and hit the victim on the right side of the head.

The pathologist simply is not qualified to offer this reconstruction or version of the event based upon an examination of the body. Nor would he be qualified to offer this version based upon an examination of the crime scene. He simply does not have that type education, experience, training or background sufficient to offer an opinion beyond the type of injury that caused the death. Dr. Kanfer never inspected the alleged scene of the injury in this case and does not possess any skill, train or experience in crime scene investigation.

In this case, it must be noted that the Defendants do not dispute that Karl Hogfeldt suffered a bloody nose while he was in the custody of the police. And, Defendants agree that more likely than not, Hogfeldt did not suffer the injuries to his ribs, jaw and arm when he fell against the wall and then to the ground. In fact, Defendants concur that most likely these injuries were the result of some type of physical altercation. What is in dispute is *when, where and by whom* these injuries were inflicted. These issues are particularly important with respect to Dr. Kanfer's testimony since he offers an opinion on all three issues. However, Dr. Kanfer is only qualified to offer an opinion as to *how* the injuries were inflicted.

9

As such, Dr. Kanfer's opinions, beyond his opinion that Hogfeldt's injuries are consistent with an assault are beyond his skill, training and experience.

### D. DR. KANFER'S TESTIMONY MUST BE PRECLUDED BECAUSE HIS OPINIONS ARE UNRELIABLE AND NOT THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS AND NOT BASED UPON SUFFICIENT FACTS AND DATA, AND DR. KANFER HAS NOT APPLIED HIS EXPERTISE RELIABLY TO THE FACTS

Dr. Kanfer intends to offer all or some of the following opinions in this case, that culminate in his ultimate opinion that, "[b]ased on a reasonable degree of medical probability, the constellation of injuries that Mr. Hogfeldt sustained is inconsistent with a fall against the wall and subsequent falling to the ground. The injuries, including multiple rib fractures, are consistent with an assault." (Report of Dr. Kanfer at 2.)

1. Hogfeldt sustained his injuries at the police station. (Kanfer Depo. at 38.)

2. Hogfeldt's injuries did not occur before he was at the police station. (Kanfer Depo. at 39.)

3. Hogfeldt's injuries did not occur after he left the police station. (Kanfer Depo. at 39.)

#### 1. Dr. Kanfer's opinions are not based upon sufficient facts and data.

Dr. Kanfer states that in forming his opinions in this case, he reviewed the Deposition of Sgt. Hull, the plaintiff's medical records from his hospital admission the day following the alleged incident, and the plaintiff's answers to the defendant's interrogatories. (Kanfer Depo. at 27.) Dr. Kanfer did not review Hogfeldt's Deposition testimony, in which he states he does not remember anything after his head was allegedly smashed against the wall several times and cannot account for the injuries to

10

eye, ribs, or arm. (Hogfeldt Depo. at 66-67, attached hereto as **Exhibit B**.) Dr. Kanfer did not review the videotape of Karl Hogfeldt, which documents Hogfeldt's condition after he was allegedly injured. Finally, Dr. Kanfer did not review Hogfeldt's other medical records which indicate Hogfeldt has twice visited the hospital with significant injuries alleging that he was injured as the result of an assault.

In other words, if a pathologist has the expertise to evaluate injuries, he should have reviewed the videotape of Hogfeldt before expressing an opinion that Hogfeldt was injured by the police, in the manner alleged by Hogfeldt. If Hogfeldt's injuries were not apparent when he was taken into custody and not apparent, from the video, when he was released from custody, with the exception of the bloody nose, which the Defendants admit occurred at the police station, then it is clear that by failing to view the videotape, Kanfer has omitted a key piece of information that should have been part of the basis of his opinions.

Furthermore, by failing to consider the other medical records, in conjunction with the videotape, Kanfer failed to take into consideration that Hogfeldt could have been assaulted before or after he was in police custody because those medical records indicate that Hogfeldt has been assaulted on two other occasions makes it possible, if not probable, that Hogfeldt has a habit of becoming intoxicated and engaging in physical altercations in which he sustains significant injury. At minimum, these records indicate that it is more likely that Hogfeldt could have been assaulted before of after he was in police custody.

      **2.**    **Dr. Kanfer's opinions are unreliable and not within the scope of his expertise.**

Dr. Kanfer's report states, "according to Mr. Hogfeldt, he was beaten about the

11

head and body, causing significant injuries. Mr. Hogfeldt alleges that while handcuffed, his head was smashed into the wall and he was kicked on the ground." (Kanfer Report at 1, attached hereto as **Exhibit C**.)  This is partially false.  While it is true that Hogfeldt alleges his head was smashed into the wall, Hogfeldt never alleges in his Deposition that he was kicked by the officers.  In fact, Hogfeldt explicitly states he cannot account for the injuries to his eye, ribs or arm.  (Hogfeldt Depo. at 66-67.)  In this regard, even Hogfeldt is speculating as to the cause of these injuries.

Despite Hogfeldt's lack of knowledge of how the injuries were inflicted, Kanfer opines that Hogfeldt's injuries occurred at the police station because Hogfeldt's statement is completely consistent with the injuries he sustained, and Sgt. Hull's statement as to what transpired at the police station is inconsistent with the injuries Mr. Hogfeldt sustained.  Kanfer's opinion is unreliable because Hogfeldt does not state any manner in which the injuries to his arm, ribs and eye occurred.  In fact, Hogfeldt explicitly states he does not know how they occurred.

Furthermore, Dr. Kanfer states in his report that:  "The Deposition of David Hull basically states that Mr. Hogfeldt was somewhat uncooperative in the police station, fell against a wall and fell to the ground, sustaining the injuries."

This is deceptive distortion of Hull's testimony.  What Dr. Kanfer fails to recognize or state is that Hull does not claim that Hogfeldt sustained a broken arm, broken ribs and eye injury from a fall against the wall.  Hull specifically states that the injuries to Hogfeldt must have occurred before or after the incident and that, other than Hogfeldt's bloody nose, his injuries did not occur while Hogfeldt was in his custody.  (Hull Depo. at 59-60, attached hereto at **Exhibit D**.)  As such, Kanfer's opinion is based on the false

12

assumptions that Hull claims Hogfeldt sustained his injuries by falling against the wall and Hogfeldt alleges he received the injuries to his eye, ribs and arm as a result of an assault by the police officers.

In this regard, it is clear that Kanfer's opinions that may actually be relevant to this case are not based upon the expertise that Kanfer actually possesses, but are based on profession speculation that relies on the testimony of Karl Hogfeldt and several witnesses that saw Karl Hogfeldt after the incident. Kanfer opines that the injuries did not occur before or after Hogfeldt was in police custody because a witness has not been found that can account for Hogfeldt sustaining these injuries either before or after his visit to the police station. This opinion is inadmissible because it does not assist the jury and because Dr. Kanfer's opinion is not the product of his expertise, but rather the product of common sense that the jury possesses and may use in reaching the same conclusion, if it chooses to believe the witness testimony.

Neither the defendants nor the plaintiff dispute that Hogfeldt's bloody nose occurred while he was in custody. What is disputed is how that injury occurred. Hogfeldt contends he was told to face the wall while handcuffed and two officers smashed his face into the wall. Sgt. Hull contends that Hogfeldt resisted being searched and pulled away and fell into the wall.

Dr. Kanfer contends that Hogfeldt's version is more consistent with the injury he suffered to his nose because the natural human response is to put your hands up when you fall. However, Dr. Kanfer's own testimony reveals that this opinion is based on speculation. Kanfer acknowledges that blunt force trauma can be caused by anything, including a wall. (Kanfer Depo. at 44.) He further acknowledges that in forming his

13

opinions that he did not consult any books or treatises; did not conduct any tests; did not build any models, did not physically examine the plaintiff; and, did not consult any articles.  In fact, Kanfer opines that based upon twenty years of experience, if you walk into a wall and put your hands up, you are not going to get the kind of injuries Hogfeldt sustained.  (Kanfer Depo. at 47.)

However, Kanfer admits has conducted no studies that would support this opinion.  And, there is nothing in Kanfer's training, education or experience that indicates that he has any background knowledge that would allow him to opine that Hogfeldt could not have sustained the injury as Hull indicated.  Kanfer has no training, experience or education on human reaction times, dynamics, physics, kinematics, studies and testing on falling, kinesiology, biomechanics or the influence of intoxication on human reaction times that would allow him to form a reliable opinion based upon sufficient science regarding the manner of the injury to Hogfeldt's nose.

Furthermore, Kanfer's opinion in this regard is not based upon sufficient information, education, skill training or experience, but is the result of professional speculation.  In essence, Kanfer opines that since the natural human response is to put out your arms when you fall, that the injury probably didn't occur how Hull describes.  A dozen other factors, not considered, tested or even known to Kanfer, because they are outside the realm of his expertise, could explain why the injury could in fact have occurred in the manner stated by the police.  Unfamiliarity with the room, close proximity to the wall, and intoxication are just a few basic explanations of why Hogfeldt did not catch the wall with his hands to prevent injury.

Many courts have routinely dismissed these types of objections as insufficient by

14

indicating that they are really just about credibility and not admissibility. The problem in this case is that Kanfer's opinion goes beyond credibility because Kanfer freely admits that he did no research, tests or consultation with treatises or articles. At minimum, Kanfer should have at least determined the time and distance required for a human to put up his hands when he begins to fall. Kanfer merely speculates on these points or failed to even consider them altogether.

"Courts have routinely excluded from trial expert testimony that was based on speculation. *See, e.g., Jetcraft Corat v. Flight Safety International,* 16 F.3d 362, 366 (10th Cir.1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Associates, Inc.,* 853 F.2d 772, 783 (10th Cir.1988) ("under the circumstances of this case, including the tentative and speculative nature of the [expert] witness' proposed testimony, we find that the exclusion of such evidence was not an abuse of discretion")". Lovato v. Burlington Northern and Santa Fe Ry. Co. 2002 WL 1424599, *5 (D.Colo.) (D. Colo. 2002). As such, Kanfer's opinion that Hogfeldt's nose injury is more consistent with Hogfeldt's version of events must be excluded.

Dr. Kanfer cannot say, and has not expressed an opinion, that based upon the medical records, Hogfeldt's other injuries, including the injuries to the eye, ribs, arm and jaw would have been apparent to anyone when he was taken into custody. As such, Kanfer's opinion that it is unlikely that the injuries did not occur before Hogfeldt was taken into custody is unreliable because he speculates that since Hogfeldt had no observable injury, he wasn't injured before he was taken into custody. This opinion is only reliable if Dr. Kanfer could say within a reasonable degree of medical certainty that Hogfeldt's injuries would have been apparent. Kanfer does not state this is his opinion.

15

In fact, this opinion is not based upon his expertise as a medical doctor because he does not state this. It is possible that Hogfeldt was injured and didn't show signs of pain because of his intoxication.

No party disputes that Hogfeldt received a bloody nose while in custody. As to the other injuries, the cause is disputed. However, since Kanfer never viewed the videotape of Karl Hogfeldt taken just before he was released from custody, he had no opinion as to whether the other injuries were apparent when Hogfeldt left the station. Kanfer has not sufficiently articulated whether all of Hogfeldt's injuries were apparent when he left the police station. In fact, he seems to articulate that the injuries to the arm and ribs only became apparent when he sought medical treatment several hours after he was released. His opinion in this regard is not helpful to the jury and not based upon any expertise that Dr. Kanfer holds.

Kanfer essentially expresses the opinion that if Hogfeldt wasn't injured when he entered the police station, and didn't suffer any injury between the time he left the police station and went to the hospital, that Hogfeldt must have received the injury when he was at the police station. This is not an opinion that requires expert testimony. Nor is this an opinion that Kanfer is qualified to offer, unless experts are now allowed to offer opinions based solely upon plain common sense.

In fact, what plaintiff is attempting to do is place an argument before the jury in the form of unnecessary expert testimony in order to bolster the credibility of that argument by using an expert. However, the jury is quite capable of formulating this opinion on its own without the assistance of an expert. Furthermore, Kanfer's opinion with respect to the injuries to the eye, ribs, arm and jaw is not based on any medical

evidence. This particular opinion is based purely on an evaluation of testimony that has nothing to do with the types of injuries Hogfeldt suffered and not on Hogfeldt's medical records.

The question of the reliability and admissibility of Kanfer's testimony would be quite different if, for example, Kanfer were going to testify that based upon the injuries Karl Hogfeldt suffered, the officers would have easily noticed that Karl Hogfeldt had a broken arm and broken ribs. Under those facts, Kanfer may be able to opine that the officers would or should have noticed any injuries that Hogfeldt had before he was taken into custody. But, Kanfer has never expressed an opinion along these lines.

"In performing its gatekeeper function under *Daubert,* the District Court must determine whether [an expert's] causation opinions are based on actual knowledge and not subjective belief or unsupported speculation. Without appropriate validation, [an expert's] opinions should be excluded." Lovato v. Burlington Northern and Santa Fe Ry. Co. 2002 WL 1424599, *9 (D. Colo.) (D. Colo. 2002) *citing Mitchell,* 165 F.3d at 780. In this case, Kanfer has no special expertise in evaluating testimony and his opinion regarding the time, place and cause of Hogfeldt's injuries to his eye, arm, ribs and jaw must be excluded.

### III. **CONCLUSION.**

For the reasons stated above, the defendants pray that their motion in limine is granted.

                                                THE DEFENDANTS,
                                                OLD SAYBROOK POLICE
                                                DEPARTMENT, SERGEANT DONALD
                                                HULL, PATROLMAN DAVID

PERROTTI, PATROLMAN CHRIS
DEMARCO, PATROLMAN JAY
RANKIN AND THE TOWN OF OLD
SAYBROOK

_____/s/ John J. Radshaw, III_____
John J. Radshaw, III, ct 19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 13th day of September 2005.

Bruce E. Newman, Esquire
Newman, Creed & Associates
99 North Street, Route 6
ATO. Box 575
Bristol, CT 06011

A. Paul Spinella, Esquire
Spinella & Associates
One Lewis Street
Hartford, CT 06103

                                                                 /s/ John J. Radshaw, III
                                                             John J. Radshaw, III