UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KARL HOGFELDT | : | NO.: 3:01CV1979 (WWE) |
| | : | |
| v. | : | |
| | : | |
| OLD SAYBROOK POLICE DEPARTMENT, ET AL | : | SEPTEMBER 13, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE RE TESTIMONY AND OPINIONS OF LOUIS
REITER**

**I.    BACKGROUND.**

The essential controversy in this case is whether Karl Hogfeldt was assaulted by Sgt. Hull in an interview room at Old Saybrook Police Headquarters on the evening of October 21, 1999 or in the early morning hours of October 22, 1999.

On October 21, 1999, at approximately 11:00 p.m., Old Saybrook Police Sergeant Donald Hull began his patrol shift in the Town of Old Saybrook. At approximately 12:30 a.m. on October 22, 1999, Sergeant Hull made a stop of a vehicle operated by the plaintiff, Karl Hogfeldt, after witnessing the vehicle's erratic operation and excessive speed.  After stopping the vehicle and upon approaching the same, Sergeant Hull noted a strong smell of alcohol emanating from Mr. Hogfeldt's person. Mr. Hogfeldt refused to perform field sobriety tests.  Officer Rankin arrived shortly after the stop to back-up Sergeant Hull. Officer Rankin observed Hogfeldt attempting field sobriety tests administered by Sergeant Hull. Sergeant Hull placed Mr. Hogfeldt under arrest for driving under the influence.  Mr. Hogfeldt was then brought to the Old Saybrook Police Department.

While at the Old Saybrook Police Department, Mr. Hogfeldt physically resisted

and was uncooperative during the search of his person, which prompted Sergeant Hull to grab and hold Mr. Hogfeldt's left arm. Mr. Hogfeldt pulled away from Sergeant Hull and struck his face against the wall of the interview room, which was approximately 18 inches from his left side.

As a result of the incident, the plaintiff has brought the following action against the defendants. The plaintiff's four-count Complaint contains the following federal and state law causes of action. In the first count, the plaintiff has alleged that a violation of his constitutional rights were caused by the implementation of a custom, policy or act of the Town of Old Saybrook by refusing or failing to screen, train, supervise and discipline police officers adequately, or by refusing or failing to prevent assault and batteries from occurring at their police headquarters.

In addition to this claim against the Town of Old Saybrook, the plaintiff alleges, under 42 U.S.C. § 1983, that the individual defendants deprived the plaintiff of the following constitutional rights: (1) Fourth Amendment right to be secure in his person against unreasonable searches and seizures, including freedom from unreasonable physical abuse, coercion and intimidation; (2) Fifth and Fourteenth Amendment due process and equal protection of the law. Lastly, the plaintiff claims that the Town of Old Saybrook is liable to the plaintiff for the individual defendants' alleged civil rights violations, and bases this claim upon the authority of Conn. Gen. Stat. § 7-465. The plaintiff further alleges the following pendent state law causes of action: (1) assault and battery against all named defendants; (2) assault and battery against the Town of Old Saybrook, pursuant to Conn. Gen. Stat. § 7-465.

The defendants expect the plaintiff to offer the testimony and opinions of police practices expert Louis Reiter. The Defendants oppose the introduction of the testimony of Mr. Reiter because: his opinions are not beyond the knowledge of the average juror and, therefore, not helpful to the jury, his opinion expresses an opinion on ultimate issue in this case, and some of his opinions are irrelevant to any issue in the case.

## II. LAW AND ARGUMENT.

### A. STANDARD OF REVIEW

Fed. R. Evid. 702, which governs the admissibility of scientific or technical expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Expert testimony must be helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson. *Id.*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court made clear that the district court has a "gatekeeping" function under Rule 702, and is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. In fulfilling this role, the district court must consider both the reliability and relevance of the proffered testimony. In gauging reliability, the district court should consider the indicia of

3

reliability identified in Rule 702, namely, (1) that the testimony is grounded on "sufficient facts or data;" (2) that the testimony "is the product of reliable principles and methods;" and (3) that "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. In so doing, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1993).

"[Expert witness] statements embodying legal conclusions exceed[ ] the permissible scope of opinion testimony under the Federal Rules of Evidence". *United States v. Scop*, 846 F.2d at 139; *see also, United States v. Bilzerian*, 926 F.2d 1285, 1294 (CA2 1991), *citing Expert Legal Te* Whether to admit expert testimony is a matter left to the discretion of the trial judge and is set aside only when the decision is "manifestly erroneous." *United States v. Schwartz*, 924 F.2d 410, 425 (CA2 1991).

    **B.    REITER'S TESTIMONY CONCERNING EVENTS AFTER THE ALLEGED USE OF FORCE IS IRRELEVANT AND MUST BE EXCLUDED.**

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

4

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

In this case, the Defendants expect Mr. Reiter to offer the following opinions.

1. The response of the officers to Hogfeldt's injury while in police custody was not consistent with generally accepted police practices and objectively unreasonable (Reiter depo. p 29 attached hereto as **Exhibit A**; Reiter Report at p. 8, attached hereto as **Exhibit B**) because:

   a. There was no documentation of the injury. (Reiter depo. p. 33)

   b. There was no medical attention provided to Hogfeldt. (Reiter de\\po. p. 33)

   c. The medical attention provided was insufficient. (Reiter deop. p. 33)

   d. The other officers failed to write written reports. (Reiter depo. p. 34)

   e. There was never an administrative investigation done. (Reiter depo. p. 34)

   f. The photograph of Hogfeldt was insufficient to document his injuries (Reiter depo. p. 34-35) no constitutional right to have photo of injury Reiter says this is a risk management issue p. 34)

2. The amount of force used was inconsistent with accepted police practices and objectively unreasonable. (Reiter report at p. 5-6).

    a.    If you accept the officers' version of events, the response to Hogfeldt in how the handled him was contrary to generally accepted police practices. (Reiter Depo. p. 29).

    b.    If you accept Hogfeldt's version of events, as supported by the extent of the injuries, indicates the force used was objectively unreasonable and contrary to generally accepted police practices. (Reiter depo. p. 29).

(Reiter depo. p. 29).

3.    The other officers, including DeMarco and Perrotti, failed to intervene in the force used. (Reiter depo. p. 47).

    a.    Under Hogfeldt's version, the other officer in the room with Hull could have intervened to prevent Hogfeldt's injuries. (Reiter depo. 37).

    b.    Under Hogfeldt's version, both other officers could have been in a location to verbally of physically interject themselves to stop the use of force. (Reiter depo. p. 37-38).

4.    The deficiencies noted including lack of medical care, no photographs, lack of reports and lack of an administrative investigation indicate a form of cover up not to create documentation that would support whether Sgt. Hull used unreasonable force. (Reiter depo. p. 48-49).

5.    The officers denied Hogfeldt medical care in violation of his 14th Amendment rights. (Reiter depo. p. 51-52).

6.    Reiter has no opinion about Monell claims of failure to screen, train, supervise, discipline or prevent assault and battery. (Reiter depo. p. 50).

6. There are elements in this case that suggest the "code of silence" was in operation in this case. (Reiter depo. p. 57). These include:

    a. DeMarco and Perrotti indicate they heard and saw nothing.

    b. They were in a position to hear and see.

    c. The failure to document injuries.

7. If the injuries occurred at the police department, any, any reasonable officer would have known that this was other than simply a bloody nose. (Reiter depo. p. 42).

Many of these opinions are irrelevant to the issues in the present case; therefore, they are inadmissible. Specifically, the plaintiff alleges claims of unreasonable force, false arrest and deprivation of his right to due process. However, Hogfeldt has not alleged a claim pursuant to the Fourteenth Amendment that the Defendants were deliberately indifferent to his medical needs.

As such, opinions 1 a. d. c. and f. and 5 above, are irrelevant to any issue in this case and must be excluded. The issue is whether the officers caused or failed to prevent these injuries by the use of failure to prevent the use of unreasonable force and/or assaulted Karl Hogfeldt, not whether the officers failed to provide sufficient medical care to Mr. Hogfeldt. As such, testimony regarding medical care provided or not provided after the incident allegedly occurred is irrelevant.

    **C. REITER'S OPINIONS CONCERNING THE EXISTENCE OF THE "CODE OF SILENCE" OR A COVER-UP ARE NOT SUFFICIENTLY RELIABLE TO BE ADMISSIBLE.**

Reiter expressed the opinion of the possibility that there was a "cover up" of the events of that evening and further expressed indicators that the "code of silence" may

have been in operation. Opinions number 4 and 6 a., b. and c. above. The "code of silence" as defined by Reiter is "the reluctance of police officers to come forth with adverse testimony against fellow officers." (Reiter depo. p. 55. )

To be admissible, an expert's testimony must be based upon sufficient facts or data, the product of reliable principles and methods, and the witness must have applied the principles and methods reliably to the facts of the case. In this case, Reiter testified at his deposition:

**Q: And taking account of all these factors that you looked at in this case and have been referred to, would it be fair to say that the code of silence probably was in effect here?**

**A: You know, I can't say probably. It's just when you look at code of silence, you would need more information, and I'll be honest with you, one of the things I didn't realize is that DeMarco and Perrotti had their depositions taken. I haven't even reviewed that, so I'm really not in a position to answer that question.**

Based on this response, any testimony regarding a cover up or the code of silence is inadmissible and should not be allowed. Mr. Reiter's opinion that there are indicators of a cover up or the code of silence is far too speculative to be placed before the jury. At minimum, for the jury to hear such an opinion, it should at least be probable.

Arguably, the existence of a cover up or the code of silence in this case may be relevant if there was information sufficient to support an opinion that is what happened. Reiter, as aforementioned, has acknowledged that while he can say there are certain indicators, based upon the evidence, he can't say the code of silence was "probably" in

8

operation.  As such, the opinion that there was a cover up or the code off silence may have been in operation should not be placed before the jury as it is speculative, unreliable, and is only intended as a back door opinion as to the credibility of the Defendants.

Furthermore, the phrase "code of silence" is unduly prejudicial to the defendants and they object to the use of this phrase at trial.  See *Townsend v. Benya*, 287 F.Supp.2d 868, 876 (N.D.Ill. 2003) ("the phrase "code of silence" is unduly prejudicial and may not be used at trial.")

### D. REITER'S OPINIONS ARE NOT HELPFUL TO THE JURY IN THAT HIS OPINIONS AND TESTIMONY ARE NOT BEYOND THE KEN OF THE AVERAGE JUROR.

Reiter is expected to testify that if Hogfeldt's version of events is true, the officers' actions were contrary to accepted police practices.   A reasonable juror would know that officers are not allowed to smash a suspect's head against the wall until he lost consciousness in response to him turning his head around after being told to stand facing the wall.  It would be quite clear to the average juror that if Hogfeldt's version of events is believed, then the officers used unreasonable force against Hogfeldt.

> Assuming a witness is qualified as an expert, his testimony can be admitted into evidence if it will assist the trier of fact to understand the evidence, or to determine a fact in issue. Fed. R. Evid. 702. Conversely, if the issues in the case are ones that jurors can understand and evaluate through their own knowledge and experience, expert testimony is not needed and should be excluded. *See, e.g., Salem v. U.S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); *United States v. Boissoneault,* 926 F.2d 230, 232-34 (2d Cir.1991) (holding that an expert should not draw a conclusion that the jury could just as easily reach based on its own knowledge or experience); *Andrews v. Metro North Commuter R.R. Co.,* 882 F.2d 705, 707-09 (2d Cir.1989) (holding that the district court erred in allowing a forensic engineer to testify on matters that were neither scientific nor beyond jury's ken)"

*Valentin v. New York City*, 1997 WL 33323099, *16 (E.D.N.Y.) (E.D.N.Y. 1997).

Reiter testified as follows:

**Q:     The six other deficiencies you noted, the lack of appropriate photographic evidence, the lack of appropriate documentation of inoperability or difficulty with the video system-excuse me, five things, then the issue with the provision of medical services, the lack of independent reports and lack of administrative investigation, do any of those items enter the evaluation of Sergeant Hull's use- alleged use of force against Mr. Hogfeldt?**

**A:     I think that's the totality of it, and the failure to do those things that were reasonable to protect the officers and the city could be also interpreted as a form of a coverup not to create documentation that would support whether Sergeant Hull used unreasonable force.**

**Q:     But the ultimate question is whether or not the force was reasonable; is that right?**

**A:     Sure. I think that's the basic threshold.**

This evasive response is a fair indicator of the lack of relevance of these opinions to the reasonableness of the use force.  These opinions are not relevant to whether the alleged use of force was reasonable because if Hogfeldt's version of events is believed by the jury, they will not need expert testimony to determine that the force used was unreasonable.

  E.  REITER'S TESTIMONY THAT THE FORCE USED WAS OBJECTIVELY UNREASONABLE IS AN IMPERMISSIBLE OPINION AS TO THE ULTIMATE ISSUE IN THE FORM OF A LEGAL CONCLUSION AND

10

**MUST BE EXCLUDED BECAUSE IT IS NOT HELPFUL TO THE JURY.**

Federal Rules of Evidence Rule 704 provides: "Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. In this case, Reiter is expected to offer the opinion that the officer's use of force was objectively unreasonable. This opinion embraces the ultimate issue in the case of whether the officers used unreasonable force under the totality of the circumstances.

While Rule 704 clearly allows the admission of an opinion as to the ultimate issue, an expert's opinion must still be helpful to the trier of fact. *Hutchison v. Cutliffe*, 344 F.Supp.2d 219, 223 (D.Me. 2004). As the court in *Hutchison*, 344 F.Supp.2d at 223, recently stated with respect to Louis Reiter's proposed opinion in a similar case:

> I agree with [defendant's] argument that Reiter should not be allowed to opine about the ultimate reasonableness of the degree of force applied. This is so not because the reasonableness of the degree of force is the ultimate factual determination in the case, but because, as [defendant] says, "once a jury decides which set of facts it believes, it will be within their ability as lay persons to decide whether the use of force was reasonable or not."" . . . Reiter should not be precluded from testifying, although his proffered testimony about the "reasonableness" of Cutliffe's actions should be excluded because his opinion on that score depends upon nothing more than a regurgitation of [plaintiff's] version of the events and his personal conclusion about the reasonableness of [defendant's] responses."

*Hutchison*, 344 F.Supp.2d at 222-2. "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances *against the admission of opinions which would merely tell the jury what result to reach,* somewhat in manner of the oath-helpers of an earlier day." *Hygh v. Jacobs*, 961 F.2d 359, 363 (C.A.2 1992) (emphasis

11

in original). Reiter's opinion that the force in this case was objectively unreasonable is not helpful to the jury because it merely tells the jury the result to reach. It can hardly be argued that if the jury believes Hogfeldt's version of events, the jury would find that the force was reasonable under the circumstances as he describes them.

"[E]xpert testimony which "merely tell[s] the jury what result to reach," is improper. Furthermore, expert testimony that expresses a legal conclusion should be excluded. *Burger v. Mays*, 176 F.R.D. 153, 156 -157 (E.D.Pa. 1997) (quoting Fed. R. Evid. 704 advisory committee's note and citing *Hygh v. Jacobs,* 961 F.2d 359, 364 (2d Cir.1992) (other citations omitted). "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (C.A.2 1992). In this case, the opinion that "the use of force in this case was objectively unreasonable" is clearly merely instructs the jury what result to reach in the form of a legal conclusion and should be excluded.

As the court stated in *Hygh v. Jacobs*, 961 F.2d 359, 364 (C.A.2 1992). "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard-explicit or implicit-to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." Hygh v. Jacobs 961 F.2d 359, 364 (C.A.2 1992) (citations omitted). "The danger is that the jury may think that the "expert" in the particular branch of the law knows more than the judge-surely an inadmissible inference in our system of law."

Based on the foregoing, Louis Reiter should not be permitted to offer the opinion

that the use of force in this case was objectively unreasonable.

### III.    CONCLUSION.

For the reasons stated above, the defendants pray that their motion in limine is granted.

                                                THE DEFENDANTS,
OLD SAYBROOK POLICE DEPARTMENT, SERGEANT DONALD HULL, PATROLMAN DAVID PERROTTI, PATROLMAN CHRIS DEMARCO, PATROLMAN JAY RANKIN AND THE TOWN OF OLD SAYBROOK


                                                _____/s/ John J. Radshaw, III_____
John J. Radshaw, III, ct 19882
HOWD & LUDORF, LLC
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this ___ day of September 2005.

Bruce E. Newman, Esquire
Newman, Creed & Associates
99 North Street, Route 6
P.O. Box 575
Bristol, CT 06011

A. Paul Spinella, Esquire
Spinella & Associates
One Lewis Street
Hartford, CT  06103

           _____/s/ John J. Radshaw, III____
           John J. Radshaw, III